(Not for Publication) (Docket Entry No. 18 )

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
:
JUDITH I. DORFMAN, :
:
         Plaintiff, :    Civil No. 06-2988 (RBK)
:
    v. :    **OPINION**
:
PINE HILL BOARD OF EDUCATION; :
KENNETH KOCZUR, :
SUPERINTENDENT; and CYNTHIA :
GUARRACINO, PRINCIPAL, :
:
         Defendants. :
_____:

**KUGLER**, United States District Judge:

      This matter comes before the Court on the motion of Defendants the Pine Hill Board of Education, Superintendent Kenneth Koczur, and Principal Cynthia Guarracino ("Defendants") for summary judgment on the complaint of Plaintiff Judith Dorfman ("Plaintiff" or "Dorfman"). Plaintiff, a former music teacher, alleges that her contract with the Pine Hill Board of Education was not renewed because of her age, in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-12(a). For the reasons that follow, Defendants' motion for summary judgment will be granted.

**I.**    **BACKGROUND**

      In September 2001, Plaintiff Dorfman, at the age of 56, was hired by the Pine Hill Board

of Education as a music teacher at the John Glenn School. (Am. Compl. ¶ 9.) She was not a tenured employee and operated under a yearly contract. For two successive years, school principal Mark Durand recommended Dorfman's employment contract be renewed, which it was. Durand retired in 2003, and Cynthia Guarracino[1] replaced him as principal at John Glenn for the 2003-2004 school year. At the end of the 2003-2004 school year, Dorfman's contract was not renewed. (Am. Compl. ¶ 11.)

Dorfman's teaching performance was evaluated several times while she was at John Glenn. According to Kenneth Koczur, Superintendent of Schools, Dorfman was a non-tenured employee, and school policy dictated she be evaluated at least three times during the school year. (Koczur Dep. at 15.) A standard evaluation form was utilized for all the evaluations. The form was divided into four checklists,[2] and the evaluator would rank the teacher's performance as either "satisfactory," "needs improvement" or "not applicable" in a variety of categories. There was also space on the form for the evaluator to write general comments, strengths, weaknesses, and recommendations for improvement. In addition, an annual written performance evaluation was done each year.

During the 2001-2002 school year, Principal Michael Durand conducted all three evaluations, which were generally satisfactory. Dorfman received no "needs improvement" checkmarks. Durand indicated Dorfman's strengths included her effective behavioral techniques

---

[1] Cynthia Guarracino's name has since changed to Cynthia Reid. She appears in the record as either "Guarracino" or "Reid"; this Opinion will refer to her as "Guarracino."

[2] The four checklists are labeled Instructional Environment, Lesson Development, Classroom Management, and General. The evaluator could also include comments based on the checkmarks.

and commented that her "students were actively involved in the lesson" and "classroom management was good." (Defs.' Ex. J Eval. Nov. 20, 2001.) However, Durand did recommend Dorfman make sure she "gets the attention of all students before beginning activity" and that she should continue to become knowledgeable regarding the New Jersey Core Content Standards. (Defs.' Ex. J Eval. Nov. 20, 2001.) Finally, Durand indicated in Dorfman's Annual Review that she had made "good progress toward establishing classroom rules and regulations," and her "Winter and Spring concerts were successful and well received." (Defs.' Ex. J Eval. May 2002.)

During the 2002-2003 school year, both Durand and James McCollum, School District Curriculum Director, conducted Dorfman's evaluations. These evaluations were generally satisfactory but did indicate Dorfman needed to improve her communication skills with students. In particular, Principal Durand noted "a variety of activities provided the students with an opportunity to participate [but Dorfman needed to] speak slower when giving directions." (Defs.' Ex. J Eval. Oct. 10, 2002.) McCollum in his March 27, 2003 evaluation also said Dorfman needed to both her communication and class management skills and specifically said, "at times you spoke too quickly and kind of mumbled things to students." (Defs.' Ex. J Eval. Mar. 27, 2003.) In previous evaluations Dorfman typically received mostly "satisfactory" checkmarks; however McCollum gave her significantly more "needs improvement" checkmarks then in prior evaluations. (Defs.' Ex. J Eval. Mar. 27, 2003.) In addition, Mr. McCollum critiqued Dorfman's discipline of her students and said, "most [of Dorfman's] students seemed to be engaged and enjoying the concert rehearsals," but Dorfman needed "to develop feelings of self-worth and accomplishment in each child." (Defs.' Ex. J Eval. Mar. 27, 2003.) Ultimately, McCollum concluded Dorfman's strengths were that she "secured the attention of the children,

3

showed evidence of planning, actively involved the students and motivated 'some' students by allowing a feeling of success/and anticipation," but he recommended she improve her classroom management.  (Defs.' Ex. J Eval. Mar. 27, 2003.)  Finally, Principal Durand, in his April 29, 2003 evaluation, again gave Dorfman a satisfactory review and said Dorfman's "lesson was well planned and carried out" but recommended she "continue to try different classroom management strategies with [her] students."  (Defs.' Ex. J Eval. Apr. 29, 2003.)

Principal Durand retired in 2003, and Cynthia Guarracino was hired in July 2003 as the new principal at John Glenn.  (Guarracino Dep. at 7.)  Guarracino and McCollum conducted three evaluations of Dorfman for the 2003-2004 school year.  On October 16, 2003, Guarracino first evaluated Dorfman.  Similar to McCollum's March 27, 2003 evaluation, Guarracino also gave Dorfman many "needs improvement" checkmarks regarding Dorfman's classroom management skills.  (Defs.' Ex. J Eval. Oct. 16, 2003.)  Guarracino did commend Dorfman for her ability to plan age-appropriate activities and said "instructionally, this was a well-planned and well-executed lesson."  (Defs.' Ex. J Eval. Oct. 16, 2003.)  However, Guarracino recommended Dorfman improve her communication skills, specifically to "state clear directions" and "be consistent."  Guarracino also instructed Dorfman to observe other elementary school music teachers and attend available workshops on management and discipline.  (Defs.' Ex. J Eval. Oct. 16, 2003.)  Following Guarracino's instructions, Dorfman did observe teachers at two different schools.  (Dorfman Dep. at 63.)

According to Dorfman, following this initial evaluation, Guarracino began unfairly criticizing her teaching techniques.  Dorfman thought that "[Guarracino] was starting to basically rip me up and go after me," though Guarracino did not make any specific verbal comments

4

regarding Dorfman's age. (Dorfman Dep. at 64, 67.) However, Dorfman believes that Guarracino's conduct in general towards Dorfman and other employees showed evidence of age-based bias. (Dorfman Dep. at 65.) In particular, Dorfman points to an incident relating to Guarracino's request that all teachers bring in photos of themselves for a bulletin board. Guarracino told Dorfman that "some teachers were bringing in photos from when they were younger or more glamorous." (Dorfman Dep. at 73.)

On January 20, 2004, McCollum conducted Dorfman's second evaluation for the school year. This time McCollum gave Dorfman mostly "satisfactory" checkmarks for her classroom management skills and said "[Dorfman] appears to have a better handle on classroom management." (Defs.' Ex. J Eval. Jan. 20, 2004.) While McCollum indicated Dorfman's student discipline had improved, he said she still needed to be more "structured, firm (assertive) and consistent." (Defs.' Ex. J Eval. Jan. 20, 2004.) McCollum indicated Dorfman's strengths were that she "secured the attention of the children at times, showed evidence of planning, made proper use of marker board, and motivated most students by allowing a feeling of success/and anticipation." (Defs.' Ex. J Eval. Jan. 20, 2004.) However, he recommended Dorfman "make sure the children know the routines and instructions on how to use things," and said Dorfman "spent too much time correcting students instead of learning music." (Defs.' Ex. J Eval. Jan. 20, 2004.) McCollum also indicated "[Dorfman] in her role as music teacher must work cooperatively with her colleagues." (Defs.' Ex. J Eval. Jan. 20, 2004.)

Guarracino conducted Dorfman's final evaluation for the 2003-2004 school year. Guarracino gave Dorfman mostly "satisfactory" checkmarks; however she did again give Dorfman "needs improvement" checkmarks for her classroom management. (Defs.' Ex. J Eval.

5

Apr. 7, 2004.) Guarracino indicated Dorfman's strengths were her lesson planning and "ability to recognize the difficulties students were having and changing teaching strategy mid-way." (Defs'' Ex. J Eval. Apr. 7, 2004.) However, Guarracino again recommended Dorfman "get all students attention before beginning an activity," "clearly articulate what [her] expectations are for students," and "to try to minimize the time spent warning students and writing names on the board." (Defs.' Ex. J Eval. Apr. 7, 2004.) After this last evaluation, at the end of the 2003-2004 school year, Dorfman's contract was not renewed, and her last day of employment was June 30, 2004. When Dorfman was called into the principal's office to discuss the non-renewal, Koczur alleged told her that there was a problem with Dorfman's "fit" at the school. (Dorfman Dep. at 90-92.)

     Dorfman additionally points to events that she believes show Guarracino's attempts to sabotage her in front of students and parents and that demonstrate Guarracino's discriminatory attitude. First, Dorfman says there was a technical problem with the microphones at the Winter 2003 concert. (Dorfman Dep. at 82.) Dorfman believes Guarracino purposely created the technical problem because there had never been similar recording problems under Principal Durand. (Dorfman Dep at 82.) Next, Dorfman notes a performance her students gave at a senior citizens' luncheon; while other groups that had contributed to the event were recognized by an announcement over the loudspeaker at school, Dorfman's students' performance was not mentioned. Additionally, Guarracino indicated that Dorfman should use an old, untuned piano to use during a concert, which Dorfman believes was because Guarracino knew that the concert would be good otherwise. (Dorfman Dep. at 104.) Finally, there was a problem with recording Dorfman's last concert at John Glenn in the Spring of 2004, and the tape that had been made of

6

the concert was destroyed. (Dorfman Dep. at 113.) According to Dorfman, Guarracino personally made sure that the tape was destroyed. (Dorfman Dep. at 115.)

Dorfman filed this action on June 30, 2006 against the Pine Hill Board of Education, Koczur, and Guarracino. She alleges that Pine Hill did not renew her contract because of her age in violation of the LAD, and she alleges that Koczur and Guarracino aided and abetted this violation. She also alleges that she was subjected to harassment because of her age. All Defendants now move for summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence presented by the parties, the Court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth

7

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.   DISCUSSION

Plaintiff's Complaint alleges non-renewal and harassment based on her age in violation of the LAD.[3]  (Am. Compl. ¶ 8, 9-18.) The Court addresses these claims in turn.

### A.   Non-Renewal of Contract

To establish age discrimination pursuant to the LAD, "an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'" Bergen Commercial Bank v. Sisler, 157 N.J. 188, 207 (1999) (quoting Maiorino v. Schering-Plough Corp., 695 A.2d 353, 363 (N.J. Super. Ct. App. Div., certif. denied, 704 A.2d 19 (N.J. 1997)). To do this where, as here, the plaintiff does not present direct evidence of discrimination, the Court applies the three-step, burden-shifting standard outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). New Jersey courts have adopted this framework for age discrimination claims under the LAD. See Bergen, 723 A.2d at 955. Under this burden-shifting framework, a plaintiff must first establish a prima facie case of discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530

---

[3]Though it has appeared at various times that Plaintiff also seeks to state a claim for gender discrimination, she indicates in her opposition to Defendants' motion that she does not allege gender discrimination. (Pl.'s Br. in Opp'n at 21.)

8

U.S. 133, 142 (2000) (citing St. Mary's Center v. Hicks, 509 U.S. 502, 506 (1993)). A rebuttable presumption of unlawful discrimination arises if a plaintiff presents this prima facie case. Sisler, 732 A.2d at 955 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Then, to rebut this presumption, the defendant employer must set forth admissible evidence of a legitimate, non-discriminatory reason for the employment decision at issue. Id.; Reeves, 530 U.S. at 142. If the defendant produces evidence of a legitimate, non-discriminatory reason, the presumption of unlawfulness disappears. Sisler, 732 A.2d at 955 (citing St. Mary's Center, 509 U.S. at 507-08.) At that point, the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason was not the real reason for the employment action, but rather was a mere pretext for discrimination. Id. The plaintiff may prove pretext directly by demonstrating that a different reason more likely motivated the employer, or indirectly by demonstrating that the employer's articulated reason is not credible. Id.; Reeves, 530 U.S. at 143. Despite these intermediate burden shifts within the discrimination standard, it is ultimately the plaintiff's burden to persuade the fact finder that the employer engaged in unlawful discrimination. Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 253; Sisler, 732 A.2d at 955.

Generally, to satisfy the first prong of the McDonnell Douglas test, the plaintiff must establish a prima facie case of discrimination by showing (1) she is a member of a class protected by anti-discrimination laws; (2) she was qualified for the position or rank; (3) she was denied promotion, reappointment, or tenure; and (4) others with similar or lesser qualifications achieved that rank or position. Greenberg v. Camden County Vocational & Tech. Schools, 708 A.2d 460, 465 (N.J. Super. Ct. App. Div. 1998) (citing Dixon v. Rutgers, 541 A.2d 1046 (N.J. 1988)); see

Sisler, 732 A.2d at 955.

Plaintiff Dorfman meets the first element of her prima facie burden, as she was at least fifty-seven years old when the decision was made not to renew her contract. See Greenberg, 708 A.2d at 466 (finding forty-eight year old plaintiff to be member of protected class); Geldreich v. American Cyanamid Co., 691 A.2d 423, 429 (N.J. Super. Ct. App. Div.1997) (holding plaintiff "was in a protected class at age fifty four"). Plaintiff has also met the third element, as it is undisputed that her contract was not renewed. Additionally, she has met the fourth element, as it is also undisputed that her position was filled by a teacher eleven years her junior. (Def.'s Ex. L.)

The evidence regarding Plaintiff's performance evaluations could be analyzed under the element of the prima facie case requiring a plaintiff to be qualified for the position at issue. However, it is clear that Defendants viewed Plaintiff as objectively qualified for the music teacher position when she was first hired and when her contract was twice renewed. See Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 938-39 (3d Cir. 1997) (noting that subjective evaluations are more susceptible of abuse and so better examined at the pretext stage than at the prima facie stage) (citations omitted); Greenberg, 708 A.2d 467-68. The Court therefore assumes arguendo that Plaintiff has met her prima facie burden.

The burden then shifts to Defendants, who have provided a legitimate non-discriminatory reason for not renewing Plaintiff's contract. Defendants argue that Plaintiff's employment was not renewed because of her negative performance evaluations. The Court has exhaustively reviewed these evaluations, as detailed above, and is satisfied that the reviews facially provide a legitimate non-discriminatory basis for choosing not to renew Plaintiff's employment.

Dorfman's evaluations were more positive under Principal Durand but still included recommendations for improving classroom management, and her evaluations under Principal Guarracino include positive comments but also directions for areas in which to improve. Defendants have met their burden to demonstrate legitimate, non-discriminatory reason for their decision regarding Plaintiff's employment.

The presumption of discrimination created when Plaintiff met her prima facie burden now disappears, and the burden shifts back to that Defendants' proffered reasons for the non-renewal were pretextual. Plaintiff can meet this burden in two ways. Fuentes v. Perskie, 32 F.3d 759, 761-62 (3d Cir. 1994). She may either (i) discredit the proffered reasons, either circumstantially or directly, or (ii) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Id. at 764. To discredit the proffered reasons, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765 (citations and footnotes omitted).

To show that Defendants' reasons are merely pretextual, Dorfman points to Koczur's comments as to her "fit" within the school and Guarracino's comments about older teachers bringing in pictures where they looked younger. She also takes issues with the substance of her evaluations, arguing that if she had as many issues as the evaluations reflect, those issues would translate into a classroom full of entirely out-of-control children and should have been addressed in her first two years of teaching at the school. She contends that her evaluations became worse than was warranted when Guarracino became principal and do not really reflect her teaching

performance.

The Court concludes that Plaintiff has not shown that a reasonable jury could rationally disbelieve Defendants' proffered reasons and find them merely a pretext for age discrimination. Though Plaintiff might disagree with Defendants' assessment of her performance, there is evidence that Defendants previously expressed some issues with her teaching and with her classroom management in particular. See Warner v. Fed. Express Corp., 174 F. Supp. 2d 215, 222-23 (D.N.J. 2001) (noting that plaintiff could not show pretext where he had produced no evidence other than to deny that the conduct underlying defendant's proffered non-discriminatory reason occurred). As early as March 2003, when Principal Durand was still at John Glenn, Dorfman's evaluations note many "needs improvement" ratings in classroom management. Similar comments are in the remaining evaluations. Koczur's statement to Plaintiff regarding her "fit" was devoid of this explanation, but the validity of the performance evaluations, and Dorfman's knowledge of the content of those evaluations, all of which she signed, is not in dispute. There is no evidence showing that Defendants' proffered performance-related reason for the non-renewal was incoherent, inconsistent or contradictory. Fuentes, 32 F.3d at 765; Edwards v. Schlumberger-Well Services, 984 F. Supp. 264, 279-80 (D.N.J. 1997).

Moreover, six other teachers' contracts were non-renewed while Koczur was Superintendent at Pine Hill. Of those six, three were replaced by older teachers and two were replaced by teachers less than two years younger. (Defs.' Ex. J.) This evidence tends to show that age was not more likely than not a motivating factor in Defendants' decision-making. See Edwards, 984 F. Supp. at 282-83 (finding that plaintiff had carried burden to show that gender was more likely than not a motivating factor where circumstantial evidence showed that company

12

was unfriendly to women and plaintiff was the only woman performing her job, which jury reasonably might connect to employer's hostile attitude towards women performing that work); Greenberg, Greenberg, 708 A. 2d at 469-70 (holding that plaintiff established age-based pretext in part based on evidence that older teachers were terminated while younger teachers with similar deficiencies were retained and statistics showed all female teachers over the age of forty-five were terminated and all eligible younger teachers were granted tenure for five years in a row).

The Court notes that Plaintiff argues that she "requested copies of the evaluations of other un-tenured employees for that final year. . . which would show if other teachers were similarly evaluated but were retained," but that Defendants did not provide this information. There is no evidence Plaintiff sought the assistance of the Court in securing this information. Moreover, the remedy here would be the procedure outlined in Fed. R. Civ. P. 56(f), which Plaintiff did not utilize. Accordingly, this Court attaches no significance to this argument.

In sum, Plaintiff has not provided evidence from which a reasonable jury could conclude that Defendants' proffered performance-related reason for not renewing her contract was pretextual or that age was more likely than not a motivating factor in the decision. Defendants are entitled to summary judgment on this claim.

    **B.**    **Harassment**

In order to establish harassment on the basis of a protected characteristic in violation of the LAD, a plaintiff must show that the defendant's 'conduct (1) would not have occurred but for the employee's [protected characteristic]; and [the conduct] was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" Taylor v. Metzgar, 706 A.2d 685, 688-89 (N.J.

1998) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. 1993).

Plaintiff alleges multiple incidents where Defendants, particularly Guarracino, took actions to "undercut" her in front of students, parents, and the rest of the school. Some of these incidents must be disregarded as they are completely unsupported by the evidence–there is no evidence to show that the tape of the Spring 2004 concert was intentionally destroyed, and there is similarly no evidence that any technical microphone difficulties were invented purposefully to make Dorfman look incompetent during the Winter 2003 concert. The rest of Plaintiff's allegations are that Guarracino made a comment that older teachers were trying to seem younger, did not commend a performance organized by Plaintiff over the loudspeaker, and had a lower-quality piano readied for a concert.

First, here is no evidence that any of these actions, except perhaps for the comment about older teachers trying to seem younger, occurred because of Plaintiff's age. Next, even if the Court were to find that Guarracino's actions were related to Plaintiff's age, these incidents, viewed together, are not severe or pervasive enough to make a reasonable teacher believe that her conditions of employment are altered so as to create a hostile working environment.

### IV.     CONCLUSION

Plaintiff has not shown that a reasonable jury could find that Defendants' reasons for not renewing her employment were merely pretextual, and she has not demonstrated that a reasonable jury could conclude that she was subjected to harassment because of her age. As a result, Defendants' motion for summary judgment is granted. An accompanying order will issue today.

Dated: 8/29/08  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge